**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**CASE NO.:**

MICHAEL SANDIFER,

    Plaintiff,

v.

NORTH FLORIDA COUNCIL, INC.,
BOY SCOUTS OF AMERICA,
A NOT FOR PROFIT CORPORATION
   Defendant.
_____/

## **COMPLAINT**

COMES NOW the Plaintiff, MICHAEL SANDIFER, by and through undersigned counsel, hereby files this complaint against Defendant, NORTH FLORIDA COUNCIL, INC., BOY SCOUTS OF AMERICA, a not for profit corporation ["North Florida Council" or "Boy Scouts"] and declares and avers as follows:

## **VENUE AND JURISDICTION**

1.    Plaintiff brings this action against BOY SCOUTS of AMERICA for discriminatory and retaliatory treatment and seeks relief pursuant to the Florida Civil Rights Act, Florida Statute §760, et seq. ("FCRA"); the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq (1964) Title VII; and 42 U.S.C. §1981, §1981(a), et seq.

2.    Defendant NORTH FLORIDA COUNCIL, INC., BOY SCOUTS OF AMERICA ["NORTH FLORIDA COUNCIL" or "Defendant"] has a principal place of business located at 521 S. Edgewood Avenue, Jacksonville, Florida 32205.

3.    Venue is proper in Duval County, Florida, insofar as the Defendant operates in Duval County, Florida and Plaintiff worked for Defendant in Duval County, Florida. Defendant is within the jurisdiction of this Court.

4.    Plaintiff SANDIFER is a citizen and resident of Duval County and at all relevant times worked for Defendant at its location in Duval County, Florida.

5.    The violations as alleged in this complaint occurred in Duval County, Florida.

6.    This Court has federal question jurisdiction over the Plaintiff's discrimination and retaliation claims in this matter, pursuant to 28 U.S.C. § 1331 and § 1343(a)(4), insofar as the matter involves a violation of § 7, 42 U.S.C. § 2000e et seq (1964) and 42 U.S.C. §1981, §1981(a), et seq.

7.    This Court has supplemental jurisdiction over the Plaintiff's related discrimination and retaliation claims under Florida Statute §760, et seq. pursuant to 28 U.S.C. § 1367.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.    Prior to the initiation of this lawsuit, Plaintiff filed a Complaint against the Defendant with the United States Equal Employment Opportunity Commission ["EEOC"] and the Florida Commission on Human Relations ["FCHR"] , alleging the claims described in this Complaint.

9.    On December 21, 2018, the EEOC issued a "Right to Sue" letter. A true and correct copy of the "Right to Sue" letter has been attached hereto as Exhibit "A."

10.    It has been more than 180 days since SANDIFER filed his Charge of Discrimination with the EEOC, as permitted by Florida Statute § 760.11(1).

11.    All conditions precedent to the institution of this lawsuit have been fulfilled.

## COMMON ALLEGATIONS

12.    Plaintiff SANDIFER is an African-American.

13.    Plaintiff SANDIFER began his employment with the Boys Scouts of America ["BSA"] for the Evangeline Area Council in or about September 1997 in Lafayette, Louisiana and with Defendant NORTH FLORIDA COUNCIL in or about June 2004, up to and including his separation on March 28, 2016.

14.    Defendant subjected Plaintiff SANDIFER to discriminatory treatment including:

    A.    Placing Plaintiff along with other African American employees in low income, high crime, single parent-dominated service areas with predominantly minority populations – where they were set up to underperform their Caucasian counterparts.

    B.    Subjecting Plaintiff to a discriminatory pay plan that treats African Americans less favorably then similarity situated employees as it relates to job assignment and pay.

    C.    Denying Plaintiff promotional opportunities;

    D.    Failing to redress Plaintiff's complaints of discrimination;

    E.    Exacerbating by condoning discrimination in their workplace; and

    F.    Otherwise retaliating against Plaintiff for his reasonable complaints.

15.    The NORTH FLORIDA COUNCIL had a pattern and practice of racial profiling employees when making job assignments. In particular the BOY SCOUTS had a practice of placing African American employees in the positions of District Executives and Field Directors in lower socioeconomic communities made up of primarily minority populations. Since income and performance were directly tied to

the goals of increasing membership, being placed in these communities with the same performance goals was discriminatory.

16. Plaintiff was hired by the NORTH FLORIDA COUNCIL in June 2004 and was interviewed and hired to work in the Suwannee Valley service area, which is a predominantly Caucasian, higher income area. At the conclusion of the interview, he was offered the position and was hired by the NORTH FLORIDA COUNCIL. After he accepted the position, however, he was informed that he would not be placed in the promised area, instead he would be placed in the Trail Ridge service area, which is a predominantly minority, high crime, lower income area. SANDIFER later discovered that no African American had ever been Field Director in the Suwannee Valley service area or the other highly successful, wealthier districts of Alachua, Black Creek, and River Bend.

17. Shortly after Jack Sears ["Sears"] became the Chief Executive Officer of the NORTH FLORIDA COUNCIL, he demoted SANDIFER to Field Director of the Scout Reach Division – a special division within the organization that does not relate to geographical areas, as the other districts do, but instead "encompasses Urban Housing Communities," according to the NORTH FLORIDA COUNCIL website. Although SANDIFER had recently won an award for his work in the Suwannee service area, wherein he oversaw four districts, he was placed in Scout Reach, which was known within the NORTH FLORIDA COUNCIL as an undesirable position.

18. During his eleven (11) year tenure as the Field Director of the Trail Ridge service area and the Scout Reach Division, SANDIFER interviewed and hired five

individuals to work as Program Specialists: John Carter, David Hall, Wifredo Adriano, Omari Smith, and Michelle Thompson. Of these individuals, all were African American except for Michelle Thompson, who was Caucasian. During the hiring process, SANDIFER was forced to have a meeting with Sears to justify why he was hiring a Caucasian female to work in the housing projects of Jacksonville. Sears only approved the hire after SANDIFER explained that Ms. Thompson would only be working the housing units on the west side of Jacksonville, in a lower crime area. This was the only time SANDIFER was required to meet with Sears to justify a hire.

19.    With the exception of Ms. Thompson, no other Caucasian employees had ever been assigned to the Scout Reach Division.

20.    In August 2013, SANDIFER was offered, and accepted, the position of Finance Director – a known and enumerated role within the organization – by Kelvin Williams. A meeting was held at the NORTH FLORIDA COUNCIL office, where SANDIFER's staff and key volunteers were advised that SANDIFER would be assuming the role of Finance Director. SANDIFER'S new Finance Director position was also announced at the NORTH FLORIDA COUNCIL's Planning Conference. Within one week, however, Sears brought SANDIFER in for a meeting and advised that he would not be assuming the role of Finance Director but would instead be a "Fundraising Specialist" – a position that did not exist within the organization and did not include a pay raise that he had been promised.

21.    SANDIFER had made it known within the office that he believed CEO Sears was engaging in discriminatory hiring, promotional, and assignment practices. For

example, SANDIFER had complained when Gary Stasco ["Stasco"], a Caucasian male, was promoted to the role of Development Director without other employees having the opportunity to interview for the position. SANDIFER had previously been Stasco's supervisor and had more experience in Finance but was not offered an interview by Sears.

22. In January 2015, SANDIFER'S Fundraising Specialist position was eliminated in an alleged "Reduction in Force" ["RIF"].

23. The NORTH FLORIDA COUNCIL employed approximately forty-five (45) employees at the time of the RIF. Of these, only six (6) were African American.

24. Despite comprising only 7.5% of the overall workforce, only African American employees were impacted by the alleged RIF (67% of the African American workforce).

25. Four out of six African Americans' positions were eliminated during this RIF: Ms. Avis Beck (terminated), Mr. Lamont Henry (demoted), Ms. Fhenell Marshal (terminated), and Plaintiff SANDIFER (demoted).

26. Of these four individuals, three held primary positions: Ms. Fhenell Marshall (Exploring Executive), Mr. Lamont Henry (District Executive), and SANDIFER (Fundraising Specialist).

27. Each of these primary positions is essential to fundraising and increasing membership, which directly impacts the success of the organization, while assistants to these primary positions are considered a "luxury" that most councils cannot afford; however, these non-essential assistant positions – all held by Caucasian employees – were not eliminated by the RIF.

28.     Despite the economic challenges the NORTH FLORIDA COUNCIL touted as the reason behind the 2015 RIF, CEO Sears created a new "luxury" position that same year and hired Caucasian male, Michael Bolton, whose primary role was to bring a rock-climbing wall to various events.

29.     Further, because of these economic challenges, none of the NORTH FLORIDA COUNCIL employees received pay raises; however, Sears provided bonuses to several Caucasian employees and directed them to keep it confidential. Upon information and belief, no African-American employees received a bonus.

30.     SANDIFER, as part of the RIF, was only offered a Senior District Executive position in the low-performing Baden Powell service area, even though there were three (3) vacant positions in traditionally higher-performing districts.

31.     Time and again, African American employees at the NORTH FLORIDA COUNCIL were assigned to service areas that had: 1.) higher minority populations (which the BSA struggles to recruit); 2.) more single-parent families (that have difficulty transporting children to after-school activities); 3.) lower income families (that struggle with the expenses associated with extracurricular activities); and 4.) higher crime rates (that discourage families to entrust their children with strangers).

32.     The Baden Powell District, to which SANDIFER was assigned, was historically the lowest performing geographical area in the NORTH FLORIDA COUNCIL.

33.     Although the NORTH FLORIDA COUNCIL was keenly aware of these challenges, SANDIFER was placed on a Performance Improvement Plan ["PIP"] in October 2015 because he was "behind on meeting key membership recruitment and fundraising goals."

34.     SANDIFER refused to sign the PIP. He informed his supervisor, Patrick Linfors ["Linfors"], that he felt the PIP was unfair and the goals unattainable. He then met with Linfors and explained that he believed African American employees were being unfairly targeted and penalized within the NORTH FLORIDA COUNCIL. In response to SANDIFER's complaint, Linfors became enraged. He swung his arm toward SANDIFER, hitting the mug of coffee that was on the table between them and splashing coffee on SANDIFER, the desk, and the floor. Linfors commenced into a tirade of profanity toward SANDIFER and was speaking with so much vehemence that his spit was flying onto SANDIFER.

35.     SANDIFER immediately left Linfors' office and asked a coworker if she had heard what occurred within the office. After the coworker acknowledged that she had heard the "bang" from the coffee mug and Linfors' yelling, SANDIFER asked her if she would write a statement to that effect and she indicated that she would. However, after repeated requests, SANDIFER discovered that Sears had ordered the coworker not to write the statement.

36.     Later that day or the following day, Sears, who was traveling at the time, contacted SANDIFER and told him not to meet with Patrick Linfors until Sears was back in town.

37.     At this point, SANDIFER's health was already suffering due to the stress of his role and the PIP, and Linfors' attack exacerbated his condition.

38.     At his physician's recommendation, SANDIFER requested time off under the Family and Medical Leave Act.

39.    After SANDIFER had exhausted his accrued time off, he contacted the Boy Scouts of America Headquarters in Irving, Texas, and was told that the local councils have resources available to assist employees in his situation. However, Jack Sears denied SANDIFER's request for these benefits.

40.    On March 28, 2016, SANDIFER contacted Sears via telephone to request additional leave at the recommendation of his physician. During the conversation, Sears asked SANDIFER, "Between you and I, what's going on?" SANDIFER explained that he was still having major medical issues stemming from the retaliatory attack by Linfors when he made his complaint of racial discrimination, to which Sears responded, "Mike, you are responsible for this and I will call you back because I'm about to go into a meeting."

41.    Upon information and belief, similarly-situated non African American employees had been given more time off for medical leave and at least one employee – with a strikingly similar service record - was given a medical retirement.

42.    SANDIFER was involuntarily discharged from the NORTH FLORIDA COUNCIL on or about March 28, 2016, while on medical leave.

43.    CEO Sears had a demonstrable history of racial animus toward African Americans, to wit:

   A.    In approximately Autumn 2008, Sears asked SANDIFER, "Why didn't you warn me about the north side [of Jacksonville]?" and then proceeded to tell SANDIFER a story about how Sears' daughter's school had played a "Black school" on the north side of Jacksonville and that his "family was afraid

because most of the people "looked like thugs and criminals" and he "feared for his life." Soon thereafter, Sears repeated the story at a staff meeting.

B.  At a management staff meeting in 2008, Sears began discussing the United States Presidential election. As SANDIFER returned from the restroom, unbeknownst to Sears, Sears stated that he would "never vote for a Black man for President."

C.  During a telephone call between Sears and SANDIFER, while Sears believed that SANDIFER was on hold, Sears stated, "I'm working with two stupid Black idiots."

D.  In January 2014, when SANDIFER asked Sears how his daughter was enjoying college, Sears told SANDIFER that "She hates it" and explained that they didn't know that the school had such a "high Black population."

44.  Plaintiff has been subjected to racially discriminatory conduct such that he was deprived of his civil rights.

### COUNT I – DISCRIMINATION – DISPARATE TREATMENT IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, FLORIDA STATUTE § 760, ET SEQ.

Plaintiff incorporates and realleges paragraphs 1. through 44. herein.

45.  Defendant is an employer as that term is defined in Florida Statute § 760.02(7).

46.  The NORTH FLORIDA COUNCIL denied Plaintiff equal opportunities for assignment and promotion to positions for which he was qualified and expressed interest, on the basis of race.

47.  NORTH FLORIDA COUNCIL's conduct of engaging in discrimination against its African American employees by making assignment and promotion decisions on

the basis of race violates the Florida Civil Rights Act, Florida Statute § 760, et seq.

48.    The Defendant has failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate discrimination from the work place and to prevent it from occurring.

49.    NORTH FLORIDA COUNCIL's discriminatory practices described above have denied Plaintiff assignments, promotional opportunities, and compensation to which he was entitled, in violation of the Florida Civil Rights Act.

50.    NORTH FLORIDA COUNCIL's alleged reasons, if any, for the disparate treatment against Plaintiff is a mere pretext, as evidenced by the pattern or practice of discrimination against African American employees generally.

51.    Plaintiff has exhausted his administrative remedies prior to bringing this action.

52.    As a result of NORTH FLORIDA COUNCIL's violations, the Plaintiff has suffered damages.

53.    As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination; Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe emotional distress, loss of skills, and mental anguish; Plaintiff has incurred other incidental expenses; Plaintiff has suffered related to the harm caused by NORTH FLORIDA COUNCIL's violations.

54.    Plaintiff has and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

55.    Plaintiff, therefore, requests relief as provided in the Prayer for Relief below.

**COUNT II – DISCRIMINATION – DISPARATE TREATMENT
IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964,
Title VII, 42 U.S.C. § 2000e ET SEQ (1964)**

Plaintiff incorporates and realleges paragraphs 1. through 44. herein.

56.   Defendant is an employer as that term is defined in Title VII.

57.   The NORTH FLORIDA COUNCIL denied Plaintiff equal opportunities for
assignment and promotion to positions for which he was qualified and expressed
interest, on the basis of race.

58.   NORTH FLORIDA COUNCIL's conduct of engaging in discrimination against its
African American employees by making assignment and promotion decisions on
the basis of race violates Title VII of the Civil Rights Act of 1964.

59.   The Defendant has failed to comply with their statutory duty to take all
reasonable and necessary steps to eliminate discrimination from the work place
and to prevent it from occurring.

60.   NORTH FLORIDA COUNCIL's discriminatory practices described above have
denied Plaintiff assignments, promotional opportunities, and compensation to
which he was entitled, in violation of Title VII.

61.   NORTH FLORIDA COUNCIL's alleged reasons, if any, for the disparate
treatment against Plaintiff is a mere pretext, as evidenced by the pattern or
practice of discrimination against African American employees generally.

62.   Plaintiff has exhausted his administrative remedies prior to bringing this action.

63.   As a result of NORTH FLORIDA COUNCIL's violations, the Plaintiff has suffered
damages.

64. As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination; Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe emotional distress, loss of skills, and mental anguish; Plaintiff has incurred other incidental expenses; Plaintiff has suffered related to the harm caused by NORTH FLORIDA COUNCIL's violations.

65. Plaintiff has and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

66. Plaintiff, therefore, requests relief as provided in the Prayer for Relief below.

## COUNT III – DISCRIMINATION
## IN VIOLATION OF 42 U.S.C 1981,1981(A)

Plaintiff SANDIFER incorporates and realleges paragraphs 1. through 44. herein.

67. Defendant engaged in racially discriminatory conduct toward Plaintiff SANDIFER such that he was deprived of his civil rights.

68. Defendant is an employer within the meaning of 42 U.S.C. §1981.

69. Plaintiff SANDIFER is an African-American male, subject to the protections of 42 U.S.C. §1981.

70. Plaintiff SANDIFER contends that the denial of job opportunities and discriminatory RIF were pre-textual and that other, similarly situated Caucasian employees were selected for more favorable service areas, despite not being the most qualified.

71. By and through the conduct described above, Defendant permitted a pattern and practice of unlawful discrimination by allowing Plaintiff SANDIFER to continue to be subjected to disparate treatment and discrimination in violation of 42 U.S.C. §§ 1981,1981(a).

72.  Plaintiff SANDIFER contends that Defendant has a policy and pattern and practice of treating similarly-situated, non-African American employees more favorably than African-American employees.

73.  Plaintiff SANDIFER contends that Defendant applies employment policies such as: anti-discrimination and discipline in a disparate manner.

74.  Defendant failed to acknowledge the discriminatory treatment of Plaintiff SANDIFER.

75.  Defendant knew or should have known that Plaintiff SANDIFER was being discriminated against and being treated in a manner disparate and less favorable than other similarly-situated Non-African American employees by the Defendants, agents, employees and/or representatives.

76.  Despite said knowledge, Defendant failed to take any remedial action.

77.  By and through the conduct described above, Defendant permitted a pattern and practice of unlawful discrimination by permitting Plaintiff SANDIFER to be subjected to continuing disparate treatment on the basis of race in violation of 42 U.S.C. § 1981.

78.  Plaintiff SANDIFER is informed and believes and based thereon alleges, that in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices which are not yet fully known.  At such time as the discriminatory practices become known, Plaintiff SANDIFER will seek leave of the Court to amend the Complaint in this regard.

79.  Plaintiff SANDIFER has suffered damages as a result of Defendant's conduct, by and through its agents, employees and/or representatives.

80.  As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination; Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe emotional distress, loss of skills, and mental anguish; Plaintiff has incurred other incidental expenses; Plaintiff has suffered related to the harm caused by NORTH FLORIDA COUNCIL's violations.

81.  Plaintiff has and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

82.  Plaintiff, therefore, requests relief as provided in the Prayer for Relief below.

### COUNT IV – DISCRIMINATION – RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, FLORIDA STATUTE § 760, ET SEQ.

Plaintiff incorporates and realleges paragraphs 1. through 44. herein.

83.  Defendant is an employer as that term is defined in Florida Statute § 760.02(7).

84.  The NORTH FLORIDA COUNCIL denied Plaintiff equal opportunities for assignment and promotion to positions for which he was qualified and expressed interest, on the basis of race.

85.  NORTH FLORIDA COUNCIL's conduct of engaging in discrimination against its African American employees by making assignment and promotion decisions on the basis of race violates the Florida Civil Rights Act, Florida Statute § 760, et seq.

86.  The Defendant has failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate discrimination from the work place and to prevent it from occurring.

87.   NORTH FLORIDA COUNCIL's discriminatory practices described above have denied Plaintiff assignments, promotional opportunities, and compensation to which he was entitled, in violation of the Florida Civil Rights Act.

88.   NORTH FLORIDA COUNCIL's alleged reasons, if any, for the disparate treatment against Plaintiff is a mere pretext, as evidenced by the pattern or practice of discrimination against African American employees generally.

89.   Plaintiff complained to his supervisor, Patrick Linfors, regarding the discriminatory treatment and was immediately attacked in a verbal and physical tirade, which exacerbated Plaintiff's medical condition and necessitated an extended medical leave.

90.   Thereafter, Plaintiff was denied benefits offered to other similarly-situated employees.

91.   Plaintiff was also denied an extension of leave beyond March 28, 2016, resulting in his involuntary termination on March 28, 2016.

92.   Plaintiff contends this disparate treatment is in further retaliation for his protected activity.

93.   Defendant failed to redress Plaintiff's complaints of discrimination.

94.   Defendant exacerbated Plaintiff's medical condition by condoning discrimination in the workplace.

95.   Plaintiff has exhausted his administrative remedies prior to bringing this action.

96.   As a result of NORTH FLORIDA COUNCIL's violations, the Plaintiff has suffered damages.

97.    As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination; Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe emotional distress, loss of skills, and mental anguish; Plaintiff has incurred other incidental expenses; Plaintiff has suffered related to the harm caused by NORTH FLORIDA COUNCIL's violations.

98.    Plaintiff has and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

99.    Plaintiff, therefore, requests relief as provided in the Prayer for Relief below.

## COUNT V – DISCRIMINATION – RETALIATION
## IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964,
## Title VII, 42 U.S.C. § 2000e ET SEQ (1964)

Plaintiff incorporates and realleges paragraphs 1. through 44. herein.

100.    Defendant is an employer as that term is defined in Title VII.

101.    The NORTH FLORIDA COUNCIL denied Plaintiff equal opportunities for assignment and promotion to positions for which he was qualified and expressed interest, on the basis of race.

102.    NORTH FLORIDA COUNCIL's conduct of engaging in discrimination against its African American employees by making assignment and promotion decisions on the basis of race violates Title VII of the Civil Rights Act of 1964.

103.    The Defendant has failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate discrimination from the work place and to prevent it from occurring.

104.  NORTH FLORIDA COUNCIL's discriminatory practices described above have denied Plaintiff assignments, promotional opportunities, and compensation to which he was entitled, in violation of Title VII.

105.  NORTH FLORIDA COUNCIL's alleged reasons, if any, for the disparate treatment against Plaintiff is a mere pretext, as evidenced by the pattern or practice of discrimination against African American employees generally.

106.  Plaintiff complained to his supervisor, Patrick Linfors, regarding the discriminatory treatment and was immediately attacked in a verbal and physical tirade, which exacerbated Plaintiff's medical condition and necessitated an extended medical leave.

107.  Thereafter, Plaintiff was denied benefits offered to other similarly-situated employees.

108.  Plaintiff was also denied an extension of leave beyond March 28, 2016, resulting in his involuntary termination on March 28, 2016.

109.  Plaintiff contends this disparate treatment is in further retaliation for his protected activity.

110.  Defendant failed to redress Plaintiff's complaints of discrimination.

111.  Defendant exacerbated Plaintiff's medical condition by condoning discrimination in the workplace.

112.  Plaintiff has exhausted his administrative remedies prior to bringing this action.

113.  As a result of NORTH FLORIDA COUNCIL's violations, the Plaintiff has suffered damages.

114.  As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination; Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe emotional distress, loss of skills, and mental anguish; Plaintiff has incurred other incidental expenses; Plaintiff has suffered related to the harm caused by NORTH FLORIDA COUNCIL's violations.

115.  Plaintiff has and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

116.  Plaintiff, therefore, requests relief as provided in the Prayer for Relief below.

### COUNT VI – DISCRIMINATION - RETALIATION
### IN VIOLATION OF 42 U.S.C 1981,1981(A)

Plaintiff incorporates and realleges paragraphs 1. through 44. herein.

117.  Defendant is an employer as that term is defined in 42 U.S.C. §1981.

118.  Plaintiff SANDIFER is an African-American male, subject to the protections of 42 U.S.C. §1981.

119.  Plaintiff SANDIFER contends that the denial of job opportunities and discriminatory RIF were pre-textual and that other, similarly situated Caucasian employees were selected for more favorable service areas, despite not being the most qualified.

120.  By and through the conduct described above, Defendant permitted a pattern and practice of unlawful discrimination by allowing Plaintiff SANDIFER to continue to be subjected to disparate treatment and discrimination in violation of 42 U.S.C. §§ 1981,1981(a).

121.  The NORTH FLORIDA COUNCIL denied Plaintiff equal opportunities for assignment and promotion to positions for which he was qualified and expressed interest, on the basis of race.

122. NORTH FLORIDA COUNCIL's conduct of engaging in discrimination against its African American employees by making assignment and promotion decisions on the basis of race violates 42 U.S.C. §1981

123. The Defendant has failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate discrimination from the work place and to prevent it from occurring.

124. NORTH FLORIDA COUNCIL's discriminatory practices described above have denied Plaintiff assignments, promotional opportunities, and compensation to which he was entitled, in violation of 42 U.S.C. §1981.

125. NORTH FLORIDA COUNCIL's alleged reasons, if any, for the disparate treatment against Plaintiff is a mere pretext, as evidenced by the pattern or practice of discrimination against African American employees generally.

126. Plaintiff complained to his supervisor, Patrick Linfors, regarding the discriminatory treatment and was immediately attacked in a verbal and physical tirade, which exacerbated Plaintiff's medical condition and necessitated an extended medical leave.

127. Thereafter, Plaintiff was denied benefits offered to other similarly-situated employees.

128. Plaintiff was also denied an extension of leave beyond March 28, 2016, resulting in his involuntary termination on March 28, 2016.

129. Plaintiff contends this disparate treatment is in further retaliation for his protected activity.

130. Defendant failed to redress Plaintiff's complaints of discrimination.

131.  Defendant exacerbated Plaintiff's medical condition by condoning discrimination in the workplace.

132.  Plaintiff has exhausted his administrative remedies prior to bringing this action.

133.  As a result of NORTH FLORIDA COUNCIL's violations, the Plaintiff has suffered damages.

134.  As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination; Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe emotional distress, loss of skills, and mental anguish; Plaintiff has incurred other incidental expenses; Plaintiff has suffered related to the harm caused by NORTH FLORIDA COUNCIL's violations.

135.  Plaintiff has and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

136.  Plaintiff, therefore, requests relief as provided in the Prayer for Relief below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered in his favor against Defendant as follows:

137.  All damages which SANDIFER has sustained as a result of DEFENDANT's conduct, including back pay, front pay, and damages for lost compensation and job benefits that he would have received but for the discriminatory practices of the Boy Scouts' NORTH FLORIDA COUNCIL;

138.  Exemplary and punitive damages in an amount commensurate with NORTH FLORIDA COUNCIL's ability to pay and to deter future discriminatory conduct;

139.  Costs incurred, including reasonable attorneys' fees, to the extent allowable by law;

140.  Pre-Judgment and Post-Judgment interest, as provided by law; and

141.  Such other and further legal and equitable relief as this Court deems necessary, just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all triable issues.

Dated this 20th day of March 2019.

SCOTT WAGNER & ASSOCIATES, P.A.
Jupiter Gardens
250 South Central Boulevard
Suite 104-A
Jupiter, FL 33458
Telephone: (561) 653-0008
Facsimile: (561) 653-0020

s/Anne Tomasello
Anne Tomasello, Esq.
Florida Bar Number 0877751
Primary e-mail: ATomasello@scottwagnerlaw.com
Secondary e-mail: mail@scottwagnerlaw.com
Secondary Address: 101 Northpoint Parkway
West Palm Beach, FL 33407
www.ScottWagnerLaw.com

s/Cathleen Scott
Cathleen Scott, Esq.
Florida Bar No. 135331
Primary e-mail: CScott@scottwagnerlaw.com
Secondary e-mail: mail@scottwagnerlaw.com
Secondary Address: 101 Northpoint Parkway
West Palm Beach, FL 33407
www.ScottWagnerLaw.com